UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-58-MOC-WCM

| | |
|---|---|
| JENNIFER LONGO, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ELIZABETH ASPINWALL, individually and in ) <br> her official capacity as an employee of Western ) <br> Carolina University, and WESTERN ) <br> NORTH CAROLINA UNIVERSITY, ) <br> ) <br> Defendants. ) <br> ) | **ORDER** |

**THIS MATTER** comes before the Court on a Motion to Dismiss by Defendants Elizabeth Aspinwall and Western Carolina University. (Doc. No. 15).

### I. PROCEDURAL BACKGROUND

After being removed as a student in the Doctor of Physical Therapy Program (the Program) at Western Carolina University (WCU), Plaintiff Jennifer Longo filed this action in Jackson County Superior Court on January 21, 2019, naming as Defendants WCU and Elizabeth Aspinwall, who was at all relevant times WCU's Assistant Director of Counseling and Psychological Services. On February 21, 2019, Defendants removed the action to this Court.

Defendants filed a Motion to Dismiss on March 29, 2019. On April 11, 2019, Plaintiff filed a Motion to Amend Complaint and an Amended Complaint. In her Amended Complaint, Plaintiff purportedly brings the following causes of action: (1) claims under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794, against Defendant WCU; and, (2) state law

1

claims of False Imprisonment, Abuse of Process, Malicious Prosecution, and "Infliction of Mental Distress" against Elizabeth Aspinwall, in both her individual and official capacities.

On April 15, 2019, the magistrate judge denied the motion to amend as moot, as it was filed within 21 days of Defendants' motion to dismiss, and the magistrate judge further denied the motion to dismiss as moot, in light of the filing of the Amended Complaint. (Doc. No. 13). On May 28, 2019, Defendants filed the pending motion to dismiss the Amended Complaint. (Doc. No. 15). Defendants contend that Plaintiff's claims should be dismissed under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. On June 11, 2019, Plaintiff filed a response, and on June 18, 2019, Defendants filed a Reply. (Doc. Nos. 17, 19). This matter is therefore ripe for disposition.

## II. FACTUAL BACKGROUND

Plaintiff alleges in the Amended Complaint that while she was enrolled in the undergraduate program at WCU, she was diagnosed with an eating disorder and major depressive disorder. (Doc. No. 12 at ¶¶ 11, 14-15: Am. Compl.). In August 2016, Plaintiff began the Program at WCU, and she finished the semester with a 3.47 GPA. (Id. at ¶¶ 16, 19). In January 2017, after beginning her spring semester, Plaintiff took a medical withdrawal from the Program and began a one-month outpatient program in Virginia. (Id. at ¶ 20).

After receiving treatment, Plaintiff reenrolled in the Program in January 2018. (Id. at ¶ 23). Before reenrolling, Plaintiff attested "to [her] ability to meet the essential functions of [their] physical therapy program as described in Essential Functions and Technical Standards of Physical Therapy." (Doc. No. 12, Ex. A). In February 2018, Plaintiff met with Dr. Dave Hudson, Professor and Department Head of Physical Therapy at WCU. (Doc. No. 12 at ¶ 24). During the meeting, Dr. Hudson reminded Plaintiff that, before reenrolling, she had attested that

2

she would be able to complete all of the essential functions of the program, which is a requirement for all students. (Id.).

On March 1, 2018, Plaintiff's father had her involuntarily committed for three days at the Harris Regional Hospital in Sylva, North Carolina, and for three more days at the Haywood Regional Medical Center in Waynesville, North Carolina. (Id. at ¶ 26). After returning to the Program, Plaintiff attempted to make up the work she had missed while she was committed. (Id. at ¶ 28). On March 2, 2018, Plaintiff received a letter from Dr. Hudson dismissing her from the Program and explaining why she was being dismissed. (Doc. No. 12, Ex. A). Dr. Hudson explained that, upon her return to the Program, she had attested to her "ability to meet the essential function of [the] physical therapy program …." (Id.). Specifically, he noted certain behaviors that she had exhibited since her return to the Program, including: (1) becoming disengaged, despondent, and unable to attend class after learning that she received a C; (2) "present[ing] to a practical examination with wounds that [she] admitted … were self-inflicted and related to stress"; (3) "threatening suicide as a condition of whether or not [she] remained in the DPT program"; and (4) without notifying any of the faculty, missing a week of class, which caused her to miss multiple exams and a quiz and prevented her from turning in her assignments. (Id.). Dr. Hudson explained that because these behaviors indicated an inability to fulfill the responsibilities of being a physical therapist, specifically the promotion of "the health, vitality, and wellbeing of others," Plaintiff was being dismissed from the Program. (Id.).

After Plaintiff was dismissed from the Program, Elizabeth Aspinwall, WCU's Assistant Director of Counseling and Psychological Services completed a petition for involuntary commitment against Plaintiff, pursuant to N.C. GEN. STAT. § 122C-261. (Id. at ¶ 33). A local magistrate approved the petition, and Plaintiff was taken to Raleigh, North Carolina, for about

3

one week.  (Id. at ¶ 34; Def.'s Ex. 1).[1]  The Petition expired after one week, and Plaintiff was released from custody.  (Id. at ¶ 34).

### III.     STANDARD OF REVIEW

Defendants have moved for dismissal of Plaintiff's claims under Rule 12(b)(1) and Rule 12(b)(2) of the Federal Rules of Civil Procedure based on sovereign immunity and, alternatively, under Rule 12(b)(6) of the Federal Rules of Civil Procedure based on failure to state a claim.  When determining the existence of subject matter jurisdiction, the Court may look to evidence outside the pleadings without converting a Rule 12(b)(1) motion to a motion for summary judgment.  See, e.g., Evans v. B. F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).  "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'"  Id. (citations omitted).  The plaintiff bears the burden of proving subject matter jurisdiction exists.  Id.

For Rule 12(b)(2) challenges to jurisdiction, the pleading's allegations are merely evidence on the issue and are not controlling.  "When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence."  Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003).

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted.  A motion to dismiss pursuant to Rule

---

[1]  As the magistrate's order was referenced by Plaintiff's complaint, the Court takes judicial notice of this document.

4

12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

IV. DISCUSSION

**A. Plaintiff's Disability Discrimination Claim under the ADA and under the Rehabilitation Act against Defendant WCU**

"Pursuant to Title II of the ADA, 'no qualified individual with a disability shall, by

5

reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity.'" Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999) (quoting 42 U.S.C. § 12132). "Similarly, the Rehabilitation Act states that 'no otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" Betts v. Rector & Visitors of the Univ. of Va., 145 F. App'x 7, 10 (4th Cir. 2005) (quoting 29 U.S.C. § 794(a)). "The ADA and the Rehabilitation Act are generally construed to impose the same requirements." Id.

To state a claim under the ADA, a plaintiff must allege that: "(1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005); Baird, 192 F.3d at 467. To allege a violation of § 504 of the Rehabilitation Act, a plaintiff must allege that (1) she has a disability; (2) she is otherwise qualified; (3) she was excluded from participation in, was denied the benefits of, or was subjected to discrimination solely by reason of her disability; and (4) WCU receives federal assistance. Proctor v. Prince George's Hosp. Ctr., 32 F. Supp. 2d 820, 826 (D. Md. 1998) (citing Doe v. Univ. of Md., 50 F.3d 1261, 1265 (4th Cir. 1995)). "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." Se. Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979). Conversely, the Act "imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." Id. at 413.

In her Amended Complaint, Plaintiff alleges that Defendant WCU intentionally discriminated against her by dismissing her from the program, even though she was in good academic standing and was performing all of her required tasks. (Doc. No. 12 at ¶ 39). Plaintiff also claims that Defendant WCU failed to accommodate her based on her alleged disabilities, which include major depressive disorder, post-traumatic stress disorder, an eating disorder, and anxiety. These allegations are enough to withstand Defendants' motion to dismiss under the standards of Iqbal and Twombly. Therefore, the Court will deny Defendants' motion to dismiss Plaintiff's ADA and Rehabilitation Act claims, including her failure to accommodate claim.[2]

**B.  Plaintiff's State Law Claims of False Imprisonment, Abuse of Process, Malicious Prosecution, and Intentional Infliction of Emotional Distress against Defendant Aspinwall In Her Official Capacity**

Next, Plaintiff's claims against Defendant Aspinwall in her official capacity as an employee of WCU will be dismissed. The claims of false imprisonment, abuse of process, malicious prosecution, and infliction of mental distress[3] are intentional torts. "A governmental entity and its officers or employees when sued in their official capacity are immune from suits

---

[2]  Defendants correctly note that courts must give great deference to an educational institution's determination regarding the necessary qualifications for their students, citing Halpern v. Wake Forest Univ. Health Sci., 669 F.3d 454, 463 (4th Cir. 2012) ("Because we are likewise at a comparative disadvantage in determining whether Halpern is qualified to continue in the Doctor of Medicine program … we accord great respect to Wake Forest's professional judgments on these issues."). The Halpern case, however, was decided on summary judgment, rather than on a motion to dismiss.

[3]  "Infliction of mental distress" is not a cognizable claim. It is unclear from her Amended Complaint whether Plaintiff is alleging intentional or negligent infliction of emotional distress. The Court here treats it as a claim of intentional infliction of emotional distress, as the rest of the named torts are all intentional acts. If Plaintiff is alleging negligent infliction of emotional distress, then the claim is subject to dismissal, as this court does not have jurisdiction over claims of negligence by state agencies. See N.C. GEN. STAT. § 143-291.

based on tort claims, unless there has been some waiver."[4] Aune v. Univ. of N.C., 120 N.C. App. 430, 436, 462 S.E.2d 678, 683 (1995) (citation omitted). For tort claims, North Carolina has provided a limited waiver of sovereign immunity by enacting the Tort Claims Act. Davis v. N.C. State Highway Comm'n, 271 N.C. 405, 408, 156 S.E.2d 685, 687 (1967).

The Tort Claims Act establishes the Industrial Commission as the designated court for "the purpose of hearing and passing upon tort claims against [state agencies]." N.C. GEN. STAT. § 143-291(a) (2017). Furthermore, the Tort Claims Act "authorizes recovery only for negligent torts. Intentional torts committed by agents and officers of the State are not compensable under the Tort Claims Act." Wojsko v. State, 47 N.C. App. 605, 610, 267 S.E.2d 708, 711 (1980); see also Hooper v. North Carolina, 379 F. Supp. 2d 804, 812 (M.D.N.C. 2005) ("[T]he State of North Carolina has not waived its sovereign immunity regarding any tort claims other than claims of negligence brought before the Industrial Commission under Article 31 of Chapter 143 of the Tort Claims Act.").

At all relevant times, Defendant Aspinwall was an employee of WCU, a North Carolina state agency funded by the North Carolina General Assembly. N.C. GEN. STAT. § 116-4 (2017). A judgment against WCU or against Aspinwall in her official capacity would be a judgment against the State of North Carolina. Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1138 (4th Cir. 1990). Accordingly, sovereign immunity bars Plaintiff from pursuing her intentional tort claims against WCU and Aspinwall in her official capacity. See Raygor v. Regents of the Univ. of Minn., 534 U.S. 533, 540-41 (2002); Pennhurst State Sch. & Hosp. v.

---

[4] Moreover, the removal of a case does not impact the determination of the state's immunity from suit because a state is not deemed to have waived its protection of state sovereign immunity by voluntarily removing an action to federal court. Stewart v. North Carolina, 393 F.3d 484, 490 (4th Cir. 2005).

Halderman, 465 U.S. 89, 120 (1984); Huang, 902 F.2d at 1138. In sum, sovereign immunity bars Plaintiff's claims of false imprisonment, abuse of process, malicious prosecution, and intentional infliction of emotional distress against WCU and Aspinwall in her official capacity. Therefore, Plaintiff's official capacity claims of false imprisonment, abuse of process, malicious prosecution, and intentional infliction of emotional distress against Defendants will be dismissed.[5]

### C. Plaintiff's Claims Against Defendant Aspinwall In Her Individual Capacity

Here, Plaintiff has also sued Defendant Aspinwall in her individual capacity, alleging North Carolina state law claims of false imprisonment, malicious prosecution, intentional infliction of emotional distress, and abuse of process against her. Defendants contend that, despite Plaintiff's allegation that she is suing Aspinwall in her individual capacity, the suit is really an official capacity suit. In support, Defendants cite Martin v. Wood, 772 F.3d 192 (4th Cir. 2014), where the plaintiff sued her supervisors, who were employees of the Commonwealth of Virginia, alleging that they failed to compensate her for overtime hours to which she was entitled under the Fair Labor Standards Act. The plaintiff intentionally failed to name as a defendant the Commonwealth of Virginia in order to avoid a sovereign immunity bar. The Fourth Circuit held that the plaintiff's FLSA claims against the individual defendants were in substance "official capacity" rather than "individual capacity" claims. Thus, the Commonwealth of Virginia was the real party in interest and Eleventh Amendment sovereign immunity therefore required dismissal of the suit. In its opinion, the Martin court stated that:

---

[5] In her response, Plaintiff argues that that sovereign immunity should not bar these claims being brought against Aspinwall in her official capacity and WCU. Plaintiff presents no case law to support this claim, and Plaintiff's position is clearly contrary to well-established case law that the State of North Carolina has not waived sovereign immunity for intentional torts.

9

> To identify the real, substantial party in interest, we thus examine the substance of the claims states in the complaint, positing inquiries such as: (1) were the allegedly unlawful actions of the state officials "tied inextricably to their official duties," Lizzi v. Alexander, 255 F.3d 128, 136 (4th Cir. 2001), aff'd, 534 U.S. 1081 (2002); (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State, cf. Pennhurst, 465 U.S. at 109, n.7; (3) would a judgment against the state officials be "institutional and official in character," such that it would operate against the State, id. at 108; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests, id.; and (5) were the state officials' actions ultra vires, id. at 111; Lizzi, 255 F.3d at 136.

Id. at 196.

Defendants contend that dismissal of Plaintiff's state law claims against Defendant Aspinwall in her individual capacity is appropriate under the five-factor test of Martin v. Wood because Defendant Aspinwall's action of completing the involuntary commitment form was inextricably tied to her official duties as WCU's Assistant Director of Counseling and Psychological Services, and the action was conducted "during the course and scope of her employment at Western Carolina." (Doc. No. 12 at ¶ 33). Defendants further contend that Plaintiff has also not alleged any facts to show that Aspinwall took any actions to further her personal interests, or that her actions were ultra vires. Defendants contend that Plaintiff cannot circumvent sovereign immunity by suing Defendant Aspinwall in her individual capacity, when her conduct of completing the petition for involuntary commitment was directly connected to her official duties as WCU's Assistant Director of Counseling and Psychological Services.

Under North Carolina law "[t]he crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief sought, not the nature of the act or omission alleged." Meyer v. Walls, 347 N.C. 97, 489 S.E.2d 880, 887 (1997) (internal quotation marks omitted). "A suit against a defendant in his individual capacity means that the plaintiff seeks recovery from the defendant directly; a suit against a defendant in his official

10

capacity means that the plaintiff seeks recovery from the entity of which the public servant defendant is an agent." Id. At this early stage in the litigation, Plaintiff's allegations sufficiently assert claims against Defendant Aspinwall in her individual capacity.[6] See Stewart v. North Carolina, 393 F.3d 484, 491 (4th Cir. 2005).

Defendants contend, alternatively, that Plaintiff fails to state a claim against Defendant Aspinwall in her individual capacity for the torts of false imprisonment, abuse of process, malicious prosecution, and intentional infliction of emotional distress. The Court finds under the lenient, plausibility standard of Twombly and Iqbal, the motion to dismiss as to these claims will be denied at this time, and the parties may raise their arguments on summary judgment after conducting discovery.[7]

---

[6] The Court, thus, finds that Martin v. Wood is not applicable to this case. Martin v. Wood involved a Fair Labor Standards Act case. In that case, the plaintiff alleged that her employer failed to compensate her for overtime hours she worked because her supervisors, who were the only defendants in the case, refused to authorize such compensation. See Martin, 772 F.3d at 196. Since the plaintiff did not allege that her supervisors "acted in an ultra vires manner or attempted to serve personal interests distinct from the [employer's] interests," the Fourth Circuit reversed the district court's ruling denying the supervisors' dismissal motion based on sovereign immunity because "virtually every factor indicates that [the supervisors were] being sued in their official capabilities" and the supervisors' actions were "inextricably tied" to their official duties." Id. Here, however, Plaintiff has alleged in the Amended Complaint that Defendant Aspinwall filed the involuntary petition "with malice" and with "lack of probable cause," and that the petition "was calculated to cause, and did cause, mental distress of a very serious kind to the Plaintiff." (Doc. No. 12 at 7). Plaintiff also alleges that Aspinwall filed the petition only after Plaintiff was dismissed from WCU; Plaintiff, therefore, alleges that when Aspinwall filed the petition she was not acting within the scope of her duties as WCU's Assistant Director of Counseling and Psychological Services.

[7] Defendants have presented evidence, for instance, outside of the pleadings, tending to show that, shortly before she was dismissed from the program, Plaintiff admitted to WCU school officials that she had self-inflicted wounds and she further "threatened suicide as a condition of whether or not [she] remained in the [WCU] program." (Doc. No. 9-1 at 1). This evidence, if presented on summary judgment, would certainly support Defendants' contention that Aspinwall's action of filing the involuntary petition was reasonable and not done with malice and that it was, in fact, done to protect Plaintiff. These facts would certainly be relevant to Plaintiff's state law claims against Aspinwall of false imprisonment, abuse of process, malicious

11

**D. Plaintiff's Claim for Punitive Damages as to the ADA and Rehabilitation Act Claims**

Finally, Defendants contend that Plaintiff's claims for punitive damages as to the ADA and Rehabilitation Act claims should be dismissed. The Court agrees. Government agencies are immune from punitive damages under Title VII. 42 U.S.C. § 1981a(b)(1). By analogy, Congress cannot have intended to subject state agencies to punitive damages on claims brought under the ADA and the Rehabilitation Act. Accord Crain v. Cty. Bd. of Educ., No. 3:15cv188, 2015 WL 6449413, at *6 (W.D.N.C. Oct. 23, 2015). Thus, Plaintiff is not entitled to punitive damages against WCU for a violation of the ADA or the Rehabilitation Act.

V. **CONCLUSION**

For the reasons stated herein, Defendants' motion to dismiss is **GRANTED** as to Plaintiff's official capacity state law claims against Defendants WCU and Aspinwall. At this early stage in the proceedings, Defendants' motion to dismiss is **DENIED** as to Plaintiff's state law tort claims against Defendant Aspinwall in her individual capacity. Defendants' motion to dismiss is **DENIED** as to Plaintiff's claim against WCU for disability discrimination under the ADA and the Rehabilitation Act. Furthermore, Plaintiff is not entitled to punitive damages against WCU for a violation of the ADA or the Rehabilitation Act. Thus, the motion to dismiss is **GRANTED** as to Plaintiff's claim for punitive damages as to Plaintiff's claim for a violation of the ADA or the Rehabilitation Act.

**IT IS, THEREFORE, ORDERED** that:

---

prosecution, and intentional infliction of emotional distress. Furthermore, had Aspinwall not filed the petition for involuntary commitment, and if Plaintiff had then committed suicide, Aspinwall may well have been exposed to a claim for negligence from Plaintiff's family. In any event, these issues are best resolved on summary judgment.

1. Defendants' Motion to Dismiss (Doc. No. 15), is **GRANTED** in part and **DENIED** in part in accordance with this Order.

Signed: July 16, 2019

Max O. Cogburn Jr.
United States District Judge